IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **HERVEY SEGALL, M.D.,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 2:22-cv-02535-JTF-cgc |
| ) | |
| **UNIVERSITY OF TENNESSEE LE** ) | |
| **BONHEUR PEDIATRIC SPECIALISTS,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO STAY AND DENYING DEFENDANT'S MOTION TO DISMISS AND OTHER OUTSTANDING MOTIONS AS MOOT**

Before the Court are two motions, both filed on October 13, 2022. First is Defendant University of Le Bonheur Pediatric Specialists' ("ULPS") Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay. (ECF No. 15.) Second is Defendant's Motion to Dismiss, which presents an argument in the alternative should the Motion to Stay be denied. (ECF No. 16.) Plaintiff Hervey Segall filed responses to both motions on November 14, 2022. (ECF Nos. 26 & 27.) For good cause shown, the Motion to Stay is **GRANTED**, and the Motion to Dismiss and all other outstanding motions are **DENIED** as moot.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Dr. Hervey Segall was hired by ULPS on September 2, 2019 to provide pediatric neuroradiology services. (ECF No. 11, 2.) Dr. Segall was also employed by the University of Tennessee Memphis College of Medicine as a faculty member at this time. (*Id.* at 3.) Dr. Segall split his time between and maintained residences in San Marino, California, and Memphis,

Tennessee. (*Id.*)

Dr. Segall's employment arrangement was complicated by the COVID-19 pandemic beginning in March 2020, when he was residing in San Marino. (*Id.*) He was 83 years old at the time and suffered from respiratory issues that required prescription medication. (*Id.*) The combination of his age and health issues made him "high risk" for COVID-19, and he was advised by Shelby County Chief Medical Officer Dr. Bruce Randolph to take heightened precautions to avoid infection. (ECF No. 11, 3.) These precautions included avoiding interstate travel and complicated his ability to return to Memphis for work. (*Id.* at 4.)

Sometime in March 2020, "Dr. Segall submitted a proposal for accommodations to Ms. Shannon Tracker, with ULPS, in which he offered to cover all added costs of remote work which would allow him to safely provide quality patient services during this period[.]" (*Id.*) Dr. Segall viewed remote work as a temporary solution to the pandemic's challenges, but Tacker "flatly rejected this proposed accommodation by Dr. Segall without further discourse." (*Id.*) From March to October 2020, Dr. Segall continued to update ULPS about his health status and propose possible telework accommodations. (*Id.*) This included consulting with Tacker and other management at ULPS including Dr. Harris Cohen, the Chairman and Radiology Department Manager, and Karen Watson, ULPS's Administrative Director. (ECF No. 11, 4.) Dr. Segall provided ULPS with guidance from the Equal Employment Opportunity Commission ("EEOC"), Center for Disease Control, and American Medical Association that supported his health restrictions and the viability of teleradiology. (*Id.* at 4-5.)

Some progress was made. Dr. Cohen told Dr. Segall that he would be able to perform his duties remotely as long as he funded the cost of a remote workstation. (*Id.* at 5.) This option was extended to Dr. Segall's younger colleagues as well, many of whom worked remotely for an

"extended[] and indefinite period during the ongoing pandemic." (*Id.*) Dr. Segall ultimately paid for the remote workstation. (*Id.*) However, after doing so, Karen Watson "flatly denied Dr. Segall's request for temporary accommodation" by denying his request to work remotely. (*Id.*) No further discussions were had between Dr. Segall and ULPS regarding any other accommodations. (ECF No. 11, 5.) Instead, Dr. Segall was furloughed from his clinical duties. (*Id.* at 6.)

Dr. Segall regarded this furlough as purely temporary and maintained his Tennessee medical licensures and Memphis residence during this time. (*Id.*) Further, Michael Ugwueke, the President/CEO of Methodist Le Bonheur Healthcare, informed him that his position and clinical privileges in their Department of Radiology had been extended through August 31, 2022. (*Id.* at 6-7.) Even after this extension, ULPS refused to discuss any accommodations. Instead, on October 9, 2020, they told Dr. Segall that his employment was being terminated effective December 31, 2020. (*Id.* at 7.)

Shortly after this, Dr. Segall filed a charge of discrimination with the EEOC for claims under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"), as well as their Tennessee state law equivalents under the Tennessee Human Rights Act ("THRA") and Tennessee Disability Act ("TDA"). (ECF No. 26, 2.) Dr. Segall claims in his Response to the present motion that "it became clear this EEOC investigation would not be completed prior to the pending statute of limitation on any potential state causes of action related to these same facts and circumstances." (*Id.*) He proposed a tolling agreement to ULPS regarding his state claims, but this was rejected. (*Id.* at 3.) In order to preserve these state claims, he filed an action in Shelby County Circuit Court on December 30, 2021, asserting only state causes of action under the THRA and TDA. (*Id.*) The TDA claims were later voluntarily dismissed by Dr. Segall. (*Id.*) ULPS answered the complaint in the state case on February 25, 2022, and also filed a

3

counterclaim against Dr. Segall for unjust enrichment and breach of contract. (ECF No. 15-1, 5-6.) Dr. Segall answered the Countercomplaint on June 22, 2022. (*Id.* at 6.) Since then, the state case has moved into the initial stages of discovery, with Dr. Segall responding to ULPS's Requests for Admission on August 10, 2022. (*Id.*) The EEOC investigation concluded on June 2, 2022, and Dr. Segall received a Right to Sue Letter. He then filed the present federal case on August 17, 2022, asserting only federal claims under the ADEA and ADA. (ECF No. 1.) Thus, Dr. Segall has two cases stemming from the termination of his employment with ULPS. First is a state case, filed on December 30, 2021, asserting only claims under the THRA for age discrimination. Second is the present federal case, filed on August 17, 2022, asserting claims under the ADEA for age discrimination and the ADA for disability discrimination.

ULPS filed the present motions on October 13, 2022. (ECF Nos. 15 & 16.) In the Motion to Dismiss or, in the Alternative, to Stay, ULPS argues that the Court should decline to exercise jurisdiction over the present case under the abstention doctrine created by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).[1] In the Motion to Dismiss, ULPS argues that Dr. Segall's ADA claims should be dismissed if the Court denies the Motion to Stay. Dr. Segall responded on November 14, 2022, arguing that the Court should assume jurisdiction over the federal case and asserting that he states a claim under the ADA. (ECF Nos. 26 & 27.)

## II.    LEGAL STANDARD

1. *Motion to Stay*

A federal court's "obligation to exercise jurisdiction over the cases properly before [it] is 'virtually unflagging.'" *William Powell Co. v. Nat. Indemnity Co.*, 18 F.4th 856, 864 (6th Cir.

---

[1] For clarity, the Court will refer to this Motion as the "Motion to Stay" for the remainder of this order.

2021) (quoting *Colorado River*, 424 U.S. at 813). However, in *Colorado River*, the Supreme Court held that where "'contemporaneous exercise of jurisdiction' exists and 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" favor abstaining, a federal court may decline to exercise jurisdiction over cases otherwise properly presented. *S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 278 (6th Cir. 2021) (quoting *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998)). Essentially, where at least one state and one federal case pertaining to the same events and claims are proceeding at the same time, abstaining under *Colorado River* may be justified.

Determining whether to abstain under *Colorado River* requires a two-step analysis. First, the Court must determine if "the concurrent and federal actions are actually parallel." *Romine*, 160 F.3d at 339. Proceedings are parallel where "the parties are substantially similar, and the claims raised in both suits are predicated on the same allegations as to the same material facts." *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 393 (6th Cir. 2017) (internal quotation marks omitted). If proceedings are parallel, then the Court must balance the following eight factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). "The decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

*2. Motion to Dismiss*

ULPS, in the alternative, seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although the complaint need not contain detailed facts, its factual assertions must be substantial enough to raise a right to relief above a speculative level. *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). However, "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense. *Iqbal*, 556 U.S. at 679. Defendants bear the burden of "proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008).

While the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account.'" *Barany-Snyder v.*

6

*Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted).

### III.   LEGAL ANALYSIS

1. *Abstention*

Questions of *Colorado River* abstention are analyzed under a two-part analysis. First, the Court must determine whether the concurrent federal and state actions are genuinely "parallel proceedings." Second, if the proceedings are indeed parallel, the Court must balance eight separate factors to determine if abstention is appropriate.

   a. *Parallel Proceedings*

ULPS argues that the state and federal cases at issue are parallel. In support of this argument, ULPS points out similarities between the two complaints and that "age discrimination claims brought under the THRA are assessed under the same analytical framework as ADEA claims." (ECF No. 15-1, 12) (quoting *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014)). Dr. Segall states that the presence of an ADA claim in the federal suit adequately differentiates it from his state suit, especially given the relatively broader scope of the ADA when compared to the TDA.

The Court finds that the proceedings here are parallel. It is uncontested that the two cases are based on the same underlying facts and asserted against the same party. The two complaints are nearly identical and allege the same sequence of events. *See* (ECF No. 15-2, 12-14.) Further, Dr. Segall's THRA and ADEA claims will be analyzed under the same framework and deal with the same allegations; proceedings are parallel where "the parties are substantially similar, and the

7

claims raised in both suits are predicated on the same allegations as to the same material facts." *VanArsdale*, 676 F. App'x at 393. While the federal suit adds an additional allegation of disability discrimination, there is no requirement for "exact parallelism." *Romine*, 160 F.3d at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). In *Romine*, the fact that the state court action contained more claims than the federal action did not preclude parallelism. *Id.*; *see also Bates v. Van Buren Tp.*, 122 F. App'x 803, 806-07 (6th Cir. 2004). More plainly, the Sixth Circuit has stated that "[p]arallelism does not require identical causes of action in the state and federal lawsuits." *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 394 (6th Cir. 2019). Here, the cases only differ in that one asserts an additional claim of disability discrimination based on the exact same events and facts as a common claim of age discrimination. Further, the state court action originally contained a claim of disability discrimination (albeit under a different statute) that was voluntarily dismissed by the plaintiff for reasons of "judicial economy". (ECF No. 26, 3.) The two complaints are similar enough to support pleadings for the exact same types of discrimination stemming from the same facts. They are parallel proceedings.

    b.  <u>Eight Factor Analysis</u>

Once the Court determines that the proceedings are parallel, it must balance eight factors for and against exercising jurisdiction. The factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21. The parties agree that the first two factors, involving state jurisdiction over property and the convenience of forum, are irrelevant to the present case. (ECF No. 15-1, 15; ECF No. 26, 7.) However, in *Romine*, the Sixth Circuit stated that inapposite or irrelevant factors weighed against abstention. *Romine*. 160 F.3d at 341 ("The first factor . . . is inapposite to the instant matter because no property is at issue; this factor thus weighs against abstention."). The Court will weigh them the same here.

The third factor, or whether abstention will help avoid piecemeal litigation, is the "paramount" factor. *Ritli v. Pizza Hut*, No. 2:13-CV-205, 2014 WL 1783988, at *2 (E.D. Tenn. May 5, 2014) (citing *Moses H. Cone*, 460 U.S. at 19). As defined by the Sixth Circuit, "[p]iecemeal litigation occurs when different courts adjudicate [] identical issue[s], thereby duplicating judicial effort and potentially rendering conflicting results." *King v. Whitmer*, 505 F. Supp. 3d 720, 734 (E.D. Mich. 2020) (quoting *Romine*, 160 F.3d at 341). Segall's two lawsuits present a high risk for piecemeal litigation. The state and federal lawsuit are premised on the same facts and assert identical age discrimination claims. While nominally different statutes, the THRA and the ADEA are analyzed identically. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006). Segall argues that this means the risk of different results is low, but this reflects a confusion of potential results with required process. The federal lawsuit does contain an ADA claim, and is thus broader than the state lawsuit, but the consequences of this will be addressed more below. Regardless, given the identical issues in the lawsuits, the risk of piecemeal litigation is high and this factor weighs in favor of abstention.

The fourth factor, or the order in which jurisdiction was obtained, is evaluated with the seventh factor, or the relative progress of both cases. The fourth factor is determined by viewing which case was filed first. *Healthcare Co. Ltd.*, 784 F. App'x at 396. Here, the state case was filed eight months before the federal case, and thus the fourth factor weighs in favor of abstention. The seventh factor also weighs in favor of abstention, as the state case has already proceeded into the early phases of discovery following answers and counterclaims, while the present federal case is resolving pre-answer motions and only just now moving into early discovery.

The fifth factor, or the source of the governing law, would initially appear to weigh against abstention. The federal suit lists only federal law claims while the state suit lists only state law

9

claims. However, "the source-of-law factor has less significance . . . where the federal courts' jurisdiction to enforce the statutory rights in question is concurrent with that of the state courts." *Romine*, 160 F.3d at 342 (quoting *Moses H. Cone*, 460 U.S. at 25). Concurrent jurisdiction is the focus of the eighth factor. Tennessee state courts possess concurrent jurisdiction over all the federal claims asserted here. *Chapman v. City of Detroit*, 808 F.2d 459, 463 (6th Cir. 1986) ("There can be no doubt that the state courts have concurrent jurisdiction with the federal courts under the ADEA"); *Tennessee Dept. of Children's Servs. v. Winesburgh*, 614 F. App'x 277, 281 (6th Cir. 2015) ("[T]his court has previously held that 'state courts have concurrent jurisdiction over ADA claims.'") (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997)). Since the eighth factor weighs in favor of abstention, the fifth factor is consequently less significant in the analysis. This is part and parcel with the sixth factor, or the adequacy of the state forum to protect the federal plaintiff's rights. Of the three total claims across the two lawsuits, two are identical (the THRA and ADEA claim), and the state court has concurrent jurisdiction over the one non-identical claim (the ADA claim). The state court is ably equipped to deal with all claims asserted across the two cases. The ADA claim, while not presently a part of the state lawsuit, would be within the concurrent jurisdiction of the state court through amendment or supplementation. Thus, the fifth, sixth, and eighth factors all weigh in favor of abstention.

   In total, three factors, two of which are irrelevant and one of which is less significant, weigh against abstention and five factors, including the paramount factor, weigh in favor. The balance of these factors favors abstention. Segall's two cases present a high risk of piecemeal litigation and present overlapping issues, all of which could be addressed in the more developed state court action. The court will thus stay the present case pending the resolution of the state court proceeding. Once those proceedings are resolved, "the court will lift the stay and adjudicate any

10

claims remaining that are not barred by *res judicata* or a similar doctrine." *Ritli*, 2014 WL 1783988 at *4.

2. *Motion to Dismiss and Other Outstanding Motions*

In keeping with the stay, the Court **DENIES** the Motion to Dismiss as Moot. Depending on the resolution of the state case, the ADA claim that is the subject of the Motion to Dismiss may ultimately be ripe for decision by the Court. Rather than resuming deliberations on a potentially outdated motion at that time, the Court believes updated briefing on the issue would better serve the case should it be required. All other outstanding motions are **DENIED** as Moot as well, until the stay is properly lifted.

### IV.     CONCLUSION

Accordingly, the Court **GRANTS** ULPS's Motion to Stay, and **DENIES** ULPS's Motion to Dismiss as Moot. In order to ensure adequate progress on the case, **the parties shall file a joint notice on the docket updating the Court on the status of the state case every ninety days**, starting from the date of entry of this order.

**IT IS SO ORDERED** this 8th day of February 2023.

*s/ John T. Fowlkes, Jr.*
JUDGE JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE